# UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. B-00-118-S1-01 |
| | § | |
| OSIEL CARDENAS-GUILLEN | § | |

## REPORT TO THE COURT REGARDING SEALED DOCKET ENTRIES AND MEMORANDUM OF LAW IN SUPPORT OF CONTINUED SEALING

COMES NOW the United States of America, hereinafter referred to as the Government, by and through Toni Trevino, Assistant United States Attorney, and files this Report in response to the Court's November 3, 2009 Order and memorandum of law in support of continued sealing.

### I. The Court's November 3, 2009 Order

On November 3, 2009, the Court Ordered the Parties to review the record in this case to determine whether good cause exists to continue to seal the documents and hearings in the record. (Dkt. No. 212) Specifically, the Court Ordered each Defendant, through his counsel, and the Government to review the sealed docket entries in this action related to their respective case and to prepare a report stating for each such entry whether that entry should be unsealed, partially redacted, or remain sealed. For each document which the Parties wish to remain sealed, or unsealed and partially redacted, the Parties are to provide a short, detailed reason why the Party believes compelling interests outweigh the right to public access and why limiting access is essential to preserve the interests of justice. The report was to be submitted, unsealed, to the Court by December 11, 2009. On December 2, 2009, the United States filed an unopposed motion to continue the time for submitting the report which the Court subsequently granted on December 7, 2009. The report is due for submission by January 8, 2010 with objections by the Parties submitted by February 5,

2010.

## II. Access to Criminal Proceedings

The First Amendment affords the public and the press a right of access to criminal trials, as well as various other aspects of a criminal case. *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 580, 100 S.Ct. 2814, 2829 (1980) (right to attend trial); *Press-Enter. Co. v. Superior Court of California, Riverside County*, 464 U.S. 501, 508-511, 104 S.Ct. 819, 823-825 (1984) (*Press-Enterprise I*) (voir dire proceedings); *Press Enter. Co. v. Superior Court of California for the County of Riverside*, 478 U.S. 1, 10, 106 S.Ct. 2735, 2741 (1986) (*Press-Enterprise II*) (preliminary hearing); *United States v. Chagra v. San Antonio Light Division of the Hearst Corp.*, 701 F.2d 354, 363-364 (5th Cir. 1983) (bail reduction hearings); but see *United States v. Edwards*, 823 F.2d 111, 117 (5th Cir. 1987) (*Edwards I*) (no first amendment right to attend midtrial questioning of jurors related to potential juror misconduct, but recognized a limited right of access to the transcript of the closed proceeding).

To determine whether the right of public access attaches to a specific proceeding, the Court utilizes a two-part test, referred to as the "experience and logic" test, which examines whether the proceeding in question has historically been open to the public and "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise II,* 478 U.S. at 8-9, 106 S.Ct. at 2740 (citing *Globe Newspaper Co. v. Superior Court for the County of Norfolk*, 457 U.S. 596, 605-606, 102 S.Ct. 2613, 2619 (1982)). However, even when the Courts have found a right of access to a particular criminal proceeding, the right is not absolute. *Press-Enterprise II*, 478 U.S. at 9-10, 106 S.Ct. at 2740-2741; *Press-Enterprise I,* 464 U.S. at 509-510, 104 S.Ct. at 823-824; *Globe Newspaper Co.*, 457 U.S. at 606-607, 102 S.Ct. at 2620. "[T]he

presumption may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Press-Enterprise II,* 478 U.S. at 9-10, 106 S.Ct. at 2741 (quoting *Press-Enterprise I,* 464 U.S. at 510, 104 S.Ct. 824). More particularly, the Supreme Court in *Press-Enterprise II* held that

> [i]f the interest asserted is the right of the accused to a fair trial, the preliminary hearing shall be closed only if specific findings are made demonstrating that, first, there is a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent and, second, reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights.

*Id.* at 14, 2743.

In *Waller v. Georgia*, the Supreme Court held that "under the Sixth Amendment any closure of a suppression hearing over the objections of the accused must meet the tests set out in [Press Enterprise I] and its predecessors." 467 U.S. 39, 47, 104 S.Ct. 2210, 2216 (1984). Later, the Fifth Circuit relied upon *Waller* and *Press-Enterprise II* to outline the following test to determine if the closure of a hearing to empanel an anonymous jury, over the objection of the defendant, violated the defendant's Sixth Amendment right to a public trial:

> (1) the party seeking to close the hearing must advance a [substantial] overriding interest that is likely to be prejudiced;
> (2) the closure must be no broader than necessary to protect that interest;
> (3) the trial court must consider reasonable alternatives to closing the proceeding; and
> (4) it must make findings adequate to support the closure.

*United States v. Edwards*, 303 F.3d 606, 616 (5th Cir. 2002) (*Edwards II*) (citing *Press-Enterprise II*, 478 U.S. at 14, 106 S.Ct. 2735, and *Waller*, 467 U.S. at 48, 104 S.Ct. 2210 (1984)).

"*Press [-Enterprise] II* requires, if closure of a presumptively open proceeding is to

withstand a first amendment challenge, that the court make specific, on-the-record, factfindings demonstrating that a substantial probability exists that an interest of a higher value will be prejudiced and that no reasonable alternatives to closure will adequately protect that interest. *Edwards I*, 823 F.2d at 119 (citing *Press-Enterprise II*, 478 U.S. 1, 106 S.Ct. at 2743). "When limited closure is ordered, the constitutional values sought to be protected by holding open proceedings may be satisfied later by making a transcript of the closed proceedings available within a reasonable time . . . ." *Press-Enterprise I*, 464 U.S. at 512, 104 S.Ct. at 825.

> Similarly, if the presumption that transcripts will be released is to be effective, once the press files a motion for disclosure, it must be given a meaningful opportunity to be heard before any contrary decision is made. *See e.g., In re Washington Post Co.*, 807 F.2d 383 (4th Cir. 1986). Pursuant to *Press [-Enterprise] II*, if the judge denies post-trial disclosure of the requested transcript, he must make specific, on-the-record factfindings demonstrating a substantial probability that higher values will be prejudiced and that reasonable alternatives cannot adequately protect those values.

*Edwards I*, 823 F.2d at 119. "Permanent redaction of transcripts may in certain circumstances represent a reasonable alternative to non-release." *United States v. Ketner*, 566 F.Supp.2d 568, 582 (W.D. Tex. 2008) (citing *Edwards I*, 823 F.3d at 120).

### III. Access to Court Records - First Amendment

Although the Supreme Court and the Fifth Circuit have not yet spoken on the issue, some circuit courts have utilized the "experience and logic test" to find that a qualified First Amendment right of access extends to many of the documents filed in criminal cases as well. *Globe Newspaper Co. v. Pokaski,* 868 F.2d 497, 502 (1st Cir. 1989); *United States v. Smith*, 776 F.2d 1104, 1112 (3rd Cir. 1985) (First Amendment right of access applies to bill of particulars); *Applications of Nat'l Broadcasting Co.,* 828 F.2d 340, 343-345 (6th Cir. 1987); *In re Search Warrant for Secretarial Area*

4

*Outside Office of Gunn*, 855 F.2d 569, 573 (8th Cir. 1988) (First Amendment right of access applies to documents filed in support of search warrants); *United States v. El-Sayegh*, 131 F.3d 158, 160-161 (D.C. Cir. 1997) (First Amendment right of access does not apply to a plea agreement that was not filed).

Recently, in *United States v. Carriles*, 2009 WL 2618584, *9-10 (W.D. Tex. August 25, 2009), while analyzing the Government's motion for a protective order regarding sensitive discovery materials filed with the court and responses thereto, the district court recognized that although the Fifth Circuit has not directly addressed the issue of a First Amendment right to access documents filed in criminal cases, "other circuits have held that the *Press-Enterprise II* test for determining a qualified First Amendment right of access applies to documents filed in connection with pretrial proceedings." If the First Amendment right of access does apply to a particular document or documents relating to a criminal case, the analysis to determine if it is proper to seal said document is the same as that set out in *Press Enterprise II*. *See Globe Newspaper Co.*, 868 F.2d at 510 (before denial of access, "trial court[s] must make 'specific, on the record findings' showing that closure is necessary to achieve a compelling interest" (citation omitted)); *Smith*, 776 F.2d at 1112 ("the trial court ensealment of the list of names can be sustained only if it 'is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest'" (citation omitted)); *In re Search Warrant*, 855 F.2d at 574 ("Proceedings may be closed and, by analogy, documents may be sealed if 'specific, on the record findings are made demonstrating that "closure is essential to preserve higher values and is narrowly tailored to that interest"' (citation omitted)).

### IV. Access to Court Records - Common Law

In addition to the First Amendment right of access to judicial documents, which has been

5

recognized by many circuit courts as noted above, there is a presumption of a right of access to judicial records which exists at common law. *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 1312 (1978).

> It is uncontested, however, that the right to inspect and copy judicial records is not absolute. Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes. . . .
> It is difficult to distill from the relatively few judicial decisions a comprehensive definition of what is referred to as the common-law right of access or to identify all the factors to be weighed in determining whether access is appropriate. The few cases that have recognized such a right do agree that the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case.

*Id.* at 598-599, 1312-1313. In exercising its discretion to seal judicial records, the court must balance the public's common law right of access against the interests favoring nondisclosure. *SEC v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993) (citing *Nixon*, 435 U.S. at 599, 602, 98 S.Ct. 1312,1314).

### V. Compelling Interests Which May Justify Closure

Among other possible justifications for closure or sealing of documents which would otherwise be subject to access pursuant to the First Amendment, courts have indicated that denial of a defendant's right to a fair trial may be a compelling interest warranting closure. *Press-Enterprise II*, 478 U.S. at 14, 106 S.Ct. at 2743; *Edwards II*, 303 F.3d at 617; *Chagra*, 701 F.2d at 364. A substantial probability that the defendant's safety or the safety of a third person will be placed in danger has also been found to be a compelling interest. *In re Copley Press, Inc. v. Higuera-Guerrero (Copley Press),* 518 F.3d 1022, 1028-1029 (9th Cir. 2008); *United States v. Brown*, 447 F.2d Supp. 666, 670-671 (W.D. Tex. 2006) In addition, courts have also held that the Government

has a compelling interest in safeguarding ongoing investigations so that they are not jeopardized, as well as safeguarding sensitive information such as the names of confidential informants. *See In re Search Warrant*, 855 F.2d at 574; *Chagra*, 701 F.2d at 364, (citing *Gannett Co. v. DePasquale*, 443 U.S. 368, 398, 99 S.Ct. 2898, 2915 (1979)); *Ketner,* 566 F. Supp.2d at 583; *Brown*, 447 F. Supp.2d at 670-671. In certain circumstances, privacy rights of third parties may even provide a compelling interest which restricts public access to proceedings otherwise subject to the First Amendment right of access. *Press-Enterprise I*, 464 U.S. at 511-512, 104 S.Ct. at 825; *Smith*, 776 F.2d at 1113.

### VI. Authority For Sealed Declarations and Findings Supporting Closure

Although required to articulate specific findings in support of closure of proceedings or the sealing of court documents which implicate the First Amendment right of access, courts have suggested that the parties' declarations supporting closure of proceedings or sealing of documents may be made in camera or under seal to protect the interest sought to be protected. *See Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 65 (4th Cir. 1989); *In re Search Warrant*, 855 F.2d at 575; *see also Waller*, 467 U.S. at 48-49, 104 S.Ct. at 2216-2217 (in Sixth Amendment case regarding closure of suppression hearing, suggested that the district court could have directed "the government to provide more detail about its need for closure, in camera if necessary"). "If appropriate, the government's submission and the [judicial] officer's reason for sealing the documents can be filed under seal." *Baltimore Sun Co.*, 886 F.2d at 65 (citation omitted). "The district court may permit the text of motions to close or seal, and any attachments, to be filed under seal pending disposition and may, if appropriate, even file its own decision under seal." *In re Search Warrant*, 855 F.2d at 575 (citations omitted). "[F]indings in a public order as to the need for sealing 'need not be extensive.' Indeed, should a court say too much the very secrecy which sealing was intended to preserve could

be impaired. The findings need only be sufficient for a reviewing court to be able to determine, *in conjunction with a review of the sealed documents themselves*, what important interest or interests the district court found sufficiently compelling to justify the denial of public access." *United States v. Steinger*, 626 F. Supp.2d 1231, 1234 (S.D. Fla. 2009) (citing *United States v. Kooistra*, 796 F.2d 1390, 1391 (11th Cir. 1986) (emphasis in original)).

The Ninth Circuit has developed its own procedure for dealing with the closure of criminal proceedings. *Oregonian Publ'ng Co. v. U.S. Dist. Court*, 920 F.2d 1462, 1466 (9th Cir. 1990) (citing *United States v. Brooklier*, 685 F.2d 1162, 1167-1168 (9th Cir. 1982)). The two-part test to determine if the proper procedures have been followed to close a criminal proceeding requires that: "(1) those excluded from the proceeding must be afforded a reasonable opportunity to state their objections; and (2) the reasons supporting closure must be articulated in findings." *Id.* Recently, in *Copley Press*, the Ninth Circuit applied the "experience and logic" test to conclude that the procedure set forth in *Brooklier* clearly contemplates that the public has a right of access to that part of the hearing to determine whether closure is proper during which the public makes its objections to closure. *See Copley Press*, 518 F.3d at 1026-1027. However, the public does not have a right to attend the hearing in its entirety. *Id*. In holding that there is no First Amendment right of access to the transcript of the closed portion of the hearing, the Court noted that

> [h]ere, for instance, the district court quite sensibly closed portions of the hearings so it could hear in private the government's explanation of how unsealing the plea would endanger Higuera-Guerrero and others. It would be highly illogical to give the public a right to read the transcripts of those portions of the hearings. The transcripts will inevitably contain not only the facts the parties hope to keep secret, but also their reasons for doing so, which are likely to be just as private as the facts at issue. It's rarely possible to justify one secret without telling other secrets. So by publishing these transcripts, we would force litigants to take a great risk: If they move to seal and lose, they make public all the additional secrets they have revealed to us in

8

making a case for sealing the proceedings.

> Opening these transcripts to the public would handicap prosecutors in particular. To convince us to close a criminal proceeding, prosecutors often must tell us about ongoing investigations. That information is extremely sensitive, as we have recognized in holding that the public is not entitled to read, prior to indictment, affidavits supporting search warrants. Openness here would likewise "frustrate criminal investigations and thereby jeopardize the integrity of the search for truth that is so critical to the fair administration of justice." What's more, disclosure of this type of information would limit the ability of prosecutors to offer plea bargains to cooperating witnesses who reasonably fear retaliation from those they inform against. If the reasons for sealing were presumptively public, prosecutors couldn't promise confidentiality in exchange for cooperation.

*Id.* at 1027-1028 (citations omitted). After concluding that there was also no First Amendment right of access to the government's motion to seal and the memorandum supporting said motion based on the same reasoning set out for the transcript of the closed portions of the hearing, the Court went on to hold that there is no common law right of access to documents filed in connection with a motion to seal. *Id.* at 1028-1029. In fact, in *Copley Press*, the Ninth Circuit actually filed a sealed addendum to their opinion which explained why certain other documents at issue in the case should remain sealed because "there remains a substantial probability that unsealing the information contained therein will endanger these people." *Id.* at 1029.

### VII. Identification of Sealed Events and Requests Regarding Need to Continue to Seal or Partially Seal Certain Documents or Proceedings

Without conceding that there is a valid claim of access pursuant to the First Amendment pertaining to any specific document or proceeding noted below, the Government responds as follows regarding sealed documents and/or proceedings regarding Osiel Cardenas-Guillen, hereinafter referred to as "the Defendant":

**DKT 94**      **Docket Entry 94** is a sealed motion which was filed by Assistant United States

Attorney (AUSA) Jody Young on February 8, 2007.

This document can be redacted and unsealed. The portions of the document which make specific factual allegations regarding the Defendant should be redacted because if those portions of the document are made public at this time, there is a substantial probability that the Defendant's right to a fair trial would be affected. The document can be unsealed upon the resolution of the Defendant's criminal case. The detailed reasons supporting continued sealing of the redacted portions are contained in an addendum which is being filed separately under seal.

**DKT 105**  **Docket Entry 105** is a sealed order filed on March 28, 2007 which relates to **Docket Entry 94**.

The order can be unsealed.

**DKT 107**  **Docket Entry 107** is a sealed motion which was filed by Michael Ramsey on April 17, 2007.

The motion can be unsealed.

**DKT 108**  **Docket Entry 108** is a sealed document which was filed by Michael Ramsey on April 17, 2007.

The document can be unsealed.

**DKT 111**  **Docket Entry 111** is a sealed response which was filed by Michael Ramsey on April 27, 2007.

The response can be unsealed.

**DKT 112**  **Docket Entry 112** is a sealed order filed on August 1, 2007 which relates to **Docket Entry 94**.

The order can be unsealed.

**DKT 120**   **Docket Entry 120** is a sealed document which was entered on February 20, 2008.

The document can be unsealed.

**DKT 127**   **Docket Entry 127** is a sealed document with an attachments which was filed on November 18, 2008.

**Docket Entry 127** should remain sealed until the resolution of the case against the Defendant at which time the document can be unsealed. There is a substantial probability that public access to **Docket Entry 127** at this time would jeopardize an ongoing investigation. In addition, there is a substantial probability that the Defendant's right to a fair trial would be affected if this document is made public prior to the resolution of the Defendant's case. The detailed reasons supporting continued sealing are contained in an addendum which is being filed separately under seal.

**DKT 128**   **Docket Entry 128** is a sealed order relating to **Docket Entry 127**.

**Docket Entry 128** should remain sealed until the resolution of the case against the Defendant at which time the document can be unsealed. There is a substantial probability that public access to **Docket Entry 128** at this time would jeopardize an ongoing investigation. In addition, there is a substantial probability that the Defendant's right to a fair trial would be affected if this document is made public prior to the resolution of the Defendant's case. The detailed reasons supporting continued sealing are contained in an addendum which is being filed separately under seal.

**DKT 166**   Docket Entry 166 is a sealed document with an attachment which was filed on March 2, 2009.

Docket Entry 166 should remain sealed until the resolution of the case against the Defendant at which time the document can be unsealed. There is a substantial probability that public access to Docket Entry 166 at this time would jeopardize an ongoing investigation. In addition, there is a substantial probability that the Defendant's right to a fair trial would be affected if this document is made public prior to the resolution of the Defendant's case. The detailed reasons supporting continued sealing are contained in an addendum which is being filed separately under seal.

**DKT 169**   Docket Entry 169 is a sealed order relating to Docket Entry 166.

Docket Entry 169 should remain sealed until the resolution of the case against the Defendant at which time the document can be unsealed. There is a substantial probability that public access to Docket Entry 169 at this time would jeopardize an ongoing investigation. In addition, there is a substantial probability that the Defendant's right to a fair trial would be affected if this document is made public prior to the resolution of the Defendant's case. The detailed reasons supporting continued sealing are contained in an addendum which is being filed separately under seal.

**DKT 171**   Docket Entry 171 is a sealed document with an attachment which was filed on March 18, 2009.

Docket Entry 171 should remain sealed until the resolution of the case against the

Defendant at which time the document can be unsealed. There is a substantial probability that public access to **Docket Entry 171** at this time would jeopardize an ongoing investigation. In addition, there is a substantial probability that the Defendant's right to a fair trial would be affected if this document is made public prior to the resolution of the Defendant's case. The detailed reasons supporting continued sealing are contained in an addendum which is being filed separately under seal.

**DKT 172**     <u>**Docket Entry 172** is a sealed order relating to **Docket Entry 171**.</u>

**Docket Entry 172** should remain sealed until the resolution of the case against the Defendant at which time the document can be unsealed. There is a substantial probability that public access to **Docket Entry 172** at this time would jeopardize an ongoing investigation. In addition, there is a substantial probability that the Defendant's right to a fair trial would be affected if this document is made public prior to the resolution of the Defendant's case. The detailed reasons supporting continued sealing are contained in an addendum which is being filed separately under seal.

**DKT 178**     <u>**Docket Entry 178** is a sealed document with an attachment which was filed on April 9, 2009.</u>

**Docket Entry 178** should remain sealed until the resolution of the case against the Defendant at which time the document can be unsealed. There is a substantial probability that public access to **Docket Entry 178** at this time would jeopardize an ongoing investigation. In addition, there is a substantial probability that the

Defendant's right to a fair trial would be affected if this document is made public prior to the resolution of the Defendant's case. The detailed reasons supporting continued sealing are contained in an addendum which is being filed separately under seal.

**DKT 179**     <u>**Docket Entry 179** is a sealed order relating to **Docket Entry 178**.</u>

**Docket Entry 179** should remain sealed until the resolution of the case against the Defendant at which time the document can be unsealed. There is a substantial probability that public access to **Docket Entry 179** at this time would jeopardize an ongoing investigation. In addition, there is a substantial probability that the Defendant's right to a fair trial would be affected if this document is made public prior to the resolution of the Defendant's case. The detailed reasons supporting continued sealing are contained in an addendum which is being filed separately under seal.

**DKT 181**     <u>**Docket Entry 181** is a sealed document with an attachment which was filed on May 11, 2009.</u>

**Docket Entry 181** should remain sealed until the resolution of the case against the Defendant at which time the document can be unsealed. There is a substantial probability that public access to **Docket Entry 181** at this time would jeopardize an ongoing investigation. In addition, there is a substantial probability that the Defendant's right to a fair trial would be affected if this document is made public prior to the resolution of the Defendant's case. The detailed reasons supporting continued sealing are contained in an addendum which is being filed separately under

seal.

**DKT 182**  <u>**Docket Entry 182** is a sealed order relating to **Docket Entry 181**.</u>

**Docket Entry 182** should remain sealed until the resolution of the case against the Defendant at which time the document can be unsealed. There is a substantial probability that public access to **Docket Entry 182** at this time would jeopardize an ongoing investigation. In addition, there is a substantial probability that the Defendant's right to a fair trial would be affected if this document is made public prior to the resolution of the Defendant's case. The detailed reasons supporting continued sealing are contained in an addendum which is being filed separately under seal.

**DKT 184**  <u>**Docket Entry 184** is a sealed document with an attachment which was filed on June 14, 2009.</u>

**Docket Entry 184** should remain sealed until the resolution of the case against the Defendant at which time the document can be unsealed. There is a substantial probability that public access to **Docket Entry 184** at this time would jeopardize an ongoing investigation. In addition, there is a substantial probability that the Defendant's right to a fair trial would be affected if this document is made public prior to the resolution of the Defendant's case. The detailed reasons supporting continued sealing are contained in an addendum which is being filed separately under seal.

**DKT 185**  <u>**Docket Entry 185** is a sealed order relating to **Docket Entry 184**.</u>

**Docket Entry 185** should remain sealed until the resolution of the case against the

Defendant at which time the document can be unsealed. There is a substantial probability that public access to **Docket Entry 185** at this time would jeopardize an ongoing investigation. In addition, there is a substantial probability that the Defendant's right to a fair trial would be affected if this document is made public prior to the resolution of the Defendant's case. The detailed reasons supporting continued sealing are contained in an addendum which is being filed separately under seal.

**DKT 187** <u>**Docket Entry 187** is a sealed document with an attachment which was filed on July 27, 2009.</u>

**Docket Entry 187** should remain sealed until the resolution of the case against the Defendant at which time the document can be unsealed. There is a substantial probability that public access to **Docket Entry 187** at this time would jeopardize an ongoing investigation. In addition, there is a substantial probability that the Defendant's right to a fair trial would be affected if this document is made public prior to the resolution of the Defendant's case. The detailed reasons supporting continued sealing are contained in an addendum which is being filed separately under seal.

**DKT 188** <u>**Docket Entry 188** is a sealed order relating to **Docket Entry 187**.</u>

**Docket Entry 188** should remain sealed until the resolution of the case against the Defendant at which time the document can be unsealed. There is a substantial probability that public access to **Docket Entry 188** at this time would jeopardize an ongoing investigation. In addition, there is a substantial probability that the

Defendant's right to a fair trial would be affected if this document is made public prior to the resolution of the Defendant's case. The detailed reasons supporting continued sealing are contained in an addendum which is being filed separately under seal.

**DKT 191**   **Docket Entry 191.**

Docket Entry 191 should remain sealed until the resolution of the case against the Defendant. When the case is resolved, some of the documents can be unsealed, some can be redacted and unsealed, and others should remain sealed. There is a substantial probability that the Defendant's right to a fair trial would be affected if this **Docket Entry 191** is made public prior to the resolution of the Defendant's case. In addition, there is a substantial probability that public access to **Docket Entry 191** at this time would jeopardize ongoing investigations and would place numerous individuals in danger. The detailed reasons supporting continued sealing are contained in an addendum which is being filed separately under seal.

**DKT 205**   **Docket Entry 205** is a sealed document with an attachment which was filed on October 6, 2009.

**Docket Entry 205** should remain sealed until the resolution of the case against the Defendant at which time the document can be unsealed. There is a substantial probability that public access to **Docket Entry 205** at this time would jeopardize an ongoing investigation. In addition, there is a substantial probability that the Defendant's right to a fair trial would be affected if this document is made public prior to the resolution of the Defendant's case. The detailed reasons supporting

continued sealing are contained in an addendum which is being filed separately under seal.

**DKT 210**  **Docket Entry 210** is a sealed order relating to **Docket Entry 205**.

**Docket Entry 210** should remain sealed until the resolution of the case against the Defendant at which time the document can be unsealed. There is a substantial probability that public access to **Docket Entry 210** at this time would jeopardize an ongoing investigation. In addition, there is a substantial probability that the Defendant's right to a fair trial would be affected if this document is made public prior to the resolution of the Defendant's case. The detailed reasons supporting continued sealing are contained in an addendum which is being filed separately under seal.

## VIII. Conclusion

In this report, along with the addendum and attachment filed under seal in connection with this report, the Government has provided evidence that there is a substantial probability that the unsealing of **DKT 94, DKT 127**, **DKT 128**, **DKT 166, DKT 169, DKT 171, DKT 172, DKT 178, DKT 179, DKT 181, DKT 182, DKT 184, DKT 185, DKT 187, DKT 188, DKT 191, DKT 205,** or **DKT 210** will place a person or persons in serious danger of physical harm, will jeopardize ongoing investigations, and/or will affect the Defendant's right to a fair trial. As discussed in the above memorandum, all of these reasons have been found by the Courts to justify the sealing of proceedings and/or documents. In addition, evidence that unsealing the documents in question would result in a substantial probability that physical safety of individuals would be placed in jeopardy, that ongoing investigations would be jeopardized, and that the Defendant's right to a fair

trial would be affected supports a finding by the Court that the danger which would be posed by unsealing outweighs the public's common law right of access to the documents in question.

For the foregoing reasons, the Government asks this Court to allow **DKT 127**, **DKT 128**, **DKT 166, DKT 169, DKT 171, DKT 172, DKT 178, DKT 179, DKT 181, DKT 182, DKT 184, DKT 185, DKT 187, DKT 188, DKT 191, DKT 205,** and **DKT 210** to remain under seal at this time. With the exception of **DKT 191**, all of the documents pertaining the other docket entries can be unsealed when the Defendant's case is resolved. The Government further asks this Court to allow the Government to provide a redacted version of the documents filed in connection with **DKT 94** for unsealing at this time. **DKT 94** can also be fully unsealed when the Defendant's case is resolved. The Government also respectfully request that if the Court includes specific findings in its Order which contain sensitive information, that those portions of the Court's Order be filed under seal.

> Respectfully submitted,
> TIM JOHNSON
> UNITED STATES ATTORNEY
>
> /s/ Toni Trevino
> TONI TREVINO
> Assistant United States Attorney
> State Bar # 20212800
> 1701 W. Highway 83, Suite 600
> McAllen, Texas
> (956) 992-9360 –Tel. (956) 992-9425 –Fax

**CERTIFICATE OF CONSULTATION**

I hereby certify that I spoke with Mr. Chip B. Lewis, attorney for Osiel Cardenas-Guillen, regarding the United States' Report to the Court Regarding Sealed Docket Entries and Memorandum of Law in Support of Continued Sealing and he advised that he was unopposed to this relief sought in said report.

TIM JOHNSON
UNITED STATES ATTORNEY

/s/ Toni Trevino
Toni Trevino
Assistant United States Attorney


**CERTIFICATE OF SERVICE**

I hereby certify that on this the 8th day of January, 2010, the United States' Report to the Court Regarding Sealed Docket Entries and Memorandum of Law in Support of Continued Sealing was electronically filed. Service on Chip B. Lewis, attorney for Osiel Cardenas-Guillen, will be automatically accomplished through the Notice of Electronic Filing of this document.

TIM JOHNSON
UNITED STATES ATTORNEY

/s/ Toni Trevino
Toni Trevino
Assistant United States Attorney