```
                    IN THE UNITED STATES DISTRICT COURT
                         SOUTHERN DISTRICT OF TEXAS
                            BROWNSVILLE DIVISION


    _____
                                          )
    UNITED STATES OF AMERICA              )
                                          ) CRIMINAL ACTION NO.
    VS.                                   ) B-00-118-1
                                          )
    OSIEL CARDENAS-GUILLEN                ) 9:52 A.M. TO 10:15 A.M.
    _____)

                                  SENTENCING
                    BEFORE THE HONORABLE HILDA G. TAGLE
                             FEBRUARY 24, 2010

    APPEARANCES:

    For the Government:         MS. TONI TREVINO
                                Assistant United States Attorney
                                1701 West Hwy. 83, Suite 600
                                McAllen, Texas   78501

    For the Government:         MR. ALBERT RATLIFF AND BRYAN K. BEST
                                Assistant United States Attorneys
                                P.O. Box 61129
                                Houston, Texas   77208

    For the Defendant:          MR. CRISPIN (C.J.) QUINTANILLA, III
                                Law Offices of Garcia, Quintanilla
                                & Palacios
                                5526 North 10th Street
                                McAllen, Texas   78504

    For the Defendant:          MR. ROBERTO J. YZAGUIRRE
                                Yzaguirre & Chapa
                                6521 North 10th Street, Suite A
                                McAllen, Texas   78504

    For the Defendant:          MR. MICHAEL RAMSEY AND
                                MR. CHIP B. LEWIS
                                Attorneys at law
                                2120 Welch
                                Houston, Texas   77019

    Official Court Interpreter: MR. IGNACIO BARRIENTOS
```

```
 1  APPEARANCES CONTINUED:

 2  Transcribed by:              HEATHER HALL
                                 Official Court Reporter
 3                               600 East Harrison, Box 16
                                 Brownsville, Texas   78520
 4                               (956)548-2510

 5

 6

 7

 8  Proceedings recorded by mechanical stenography, transcript
    produced by computer.
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          *(Call to Order of the Court.)*

2                  THE COURT:  Good morning.  Please be seated.

3                  At this time the Court calls cause number 00-CR-118-1,
4    *United States of America versus Osiel Cardenas-Guillen.*

5                  Those of who are present here asking to be heard,
6    please announce your name for the record and whom you represent.

7                  MS. TREVINO:  Toni Trevino for the United States
8    Government.  Present and ready.

9                  MR. RATLIFF:  Albert Ratliff for the United States
10   Government.

11                 MR. YZAGUIRRE:  Robert Yzaguirre for Mr. Cardenas,
12   Your Honor.  We're present and ready.

13                 MR. QUINTANILLA:  C.J. Quintanilla on behalf of
14   Mr. Cardenas, Your Honor.  We're present.  We're ready.

15                 MR. LEWIS:  Chip Lewis for Mr. Cardenas, Your Honor.

16                 MR. RAMSEY:  Michael Ramsey for the same, Your Honor.

17                 THE COURT:  All right.

18                 The first order of business is the motions of the
19   government to seal the sentencing hearing, the government having
20   requested the Court to find that it is necessary to close the
21   courtroom during the sentencing hearing of this defendant and to
22   refrain the docketing of the sentencing hearing as it's recited
23   here, it being, "Until eight hours after the sentencing is
24   terminated or until such time as the United States Marshal's
25   Service advises the Court that it is safe to docket the hearing,

1  whichever occurs earlier."
2          This motion was filed on February 18th, 2010.  It's my
3  understanding that the government's position is now, given the
4  timing, I think, of the Marshal's transport of the defendant,
5  that rather than as requested here, that the -- the request to
6  seal be until the -- the Court is advised by the Marshal to --
7  that it is safe to docket the hearing.
8          Is that correct?
9          MS. TREVINO:  That's correct, Your Honor, if the Court
10 could modify the order to reflect such.
11         THE COURT:  All right.  Then the motion is filed at
12 the request of the United States Marshal's Service for reasons
13 which are strictly related to the security of the defendant,
14 court personnel, United States Marshal's Service personnel,
15 other courthouse personnel, and the general public.
16         The government has also filed a motion to seal this
17 motion as well.  Is that correct, Ms. Trevino?
18         MS. TREVINO:  That's correct, Your Honor.
19         MR. QUINTANILLA:  Your Honor, there was one matter
20 that was not mentioned in the motion, and we're asking for an
21 oral amendment.  There's an exception for the case agents and
22 the victims, which were agents in the -- mentioned in the counts
23 in the indictment that he pled guilty to.  But last night
24 Ms. Trevino and I spoke, and we're asking if the Court would
25 permit his wife and his daughter to also be present, Your Honor.

```
 1                 THE COURT:  All right.
 2                 Ms. Trevino?
 3                 MS. TREVINO:  The government's unopposed, Your Honor.
 4                 THE COURT:  All right.
 5                 Then that request would be granted.
 6                 MR. QUINTANILLA:  May I be excused to call them in?
 7                 THE COURT:  Yes, but can you please also --
 8                 MR. QUINTANILLA:  Yes, Your Honor.
 9                 THE COURT:  Let me recite for the record that in spite
10   of all the efforts to ensure that this hearing not be noticed by
11   the media, I am told that there is a reporter from the Houston
12   Chronicle who is, as I speak, drafting a motion regarding his
13   request to be heard -- or to be present during the -- the
14   hearing.
15                 So to the extent that you -- when you step outside to
16   make that -- the Court's order known to the family, please do so
17   without having anybody else --
18                 MR. QUINTANILLA:  I understand.
19                 THE COURT:  -- know, if at all possible, what's
20   happening.
21                 MR. QUINTANILLA:  Yes, your Honor.
22                 THE COURT:  Thank you.
23                 MR. QUINTANILLA:  Thank you, Your Honor.  I'll be
24   right back.
25                 THE COURT:  The position of the United States and the
```

1   United States Marshal's Service being that a variety of factors
2   have created a situation in which the docketing of the
3   sentencing hearing of the defendant and a failure to seal the
4   sentencing hearing will result in a substantial probability that
5   the defendant, court personnel, United States Marshal personnel,
6   other courthouse personnel, and the general public will be
7   placed in imminent danger.  Attached to that motion was the
8   affidavit of George Hephner, the -- a Supervisory Deputy
9   United States Marshal who explained in that affidavit the
10  concerns of the United States Marshal's Service and the need for
11  sealing.
12          The Court is providing for the record a copy of that
13  affidavit that specifies the factual basis for the concern of
14  the Marshal's service for these -- concern that the people or
15  individuals previously named would be placed in imminent danger
16  should this sealing -- should this hearing not be sealed, and,
17  again, that affidavit of George Hephner will be included as part
18  of the record for this -- in support of this Court's order.
19          Therefore, the Court finds that there is a substantial
20  probability that failure to seal the documents and the failure
21  to seal this hearing will result in a substantial probability
22  that the safety and lives of persons will be placed in danger
23  and that ongoing investigations as well would be jeopardized,
24  the Court further finding that there is a substantial
25  probability that failure to seal the United States' motion to

1   seal will result in a substantial probability that the lives and
2   safety of persons will be placed in danger and that ongoing
3   investigations will be jeopardized.
4               Therefore, in the interest of justice and based on the
5   reasons contained in the United States' motion to seal and the
6   United States' motion to seal the hearing, the Court orders that
7   these documents be maintained under seal by the clerk of the
8   Court, that this order shall itself not be filed under seal --
9   seal, and that, further, that the Court will order the docketing
10  of the minutes of this hearing, the docketing of the sentencing
11  hearing itself as well as the availability of the court
12  reporter's transcript to be requested will be contingent on the
13  Marshal's service conveying to the Court its belief that the --
14  the -- those -- possibility of substantial danger or substantial
15  possibility of danger imminent -- the public being placed in
16  imminent danger has passed, and it will be at that point that
17  all of those things will be unsealed.
18              MS. TREVINO:  Your Honor, is it my understanding that
19  the affidavit of George Hephner will be remain sealed --
20              THE COURT:  Yes.
21              MS. TREVINO:  -- that one document?  Thank you.
22              THE COURT:  All right.  But it'll be for the purposes
23  of the record should there be a challenge by the intervenor.
24              MS. TREVINO:  I understand.
25              THE COURT:  All right.  Then I believe -- is there any

1   other housekeeping matter before the -- the defendant is ordered
2   brought into the courtroom?
3           *(No response.)*
4           THE COURT:  No?
5           Where's Ms. Fletcher, by the way?  I don't see her.
6           There she is.  Sorry.
7           All right.  Then please bring in the defendant.
8           And who will be lead counsel for the purposes of this
9   sentencing hearing?
10          MR. YZAGUIRRE:  Both Mr. Quintanilla and myself.
11          THE COURT:  All right.
12          MR. QUINTANILLA:  That's correct, Your Honor.
13      *(Defendant present.)*
14          THE COURT:  All right.  First of all, Mr. Yzaguirre
15  and Mr. Quintanilla, have you reviewed the presentence report
16  with your client?
17          MR. YZAGUIRRE:  Yes, Your Honor.  We both have.
18          MR. QUINTANILLA:  We have, Your Honor.  We even
19  provided a Spanish transcription -- translation for him,
20  Your Honor.  He's had it for several weeks now, Your Honor.
21          THE COURT:  All right.
22          Mr. Cardenas, would you please indicate for the record
23  whether you have reviewed or have -- whether your attorneys,
24  when they reviewed the presentence report with you, whether you
25  understood everything that was contained in that report.

```
 1                    THE DEFENDANT:  Yes, Your Honor.
 2                    THE COURT:  All right.
 3                    Are there any objections by the defendant to this
 4    presentence report?
 5                    MR. QUINTANILLA:  None whatsoever, Your Honor.
 6                    MR. YZAGUIRRE:  None whatsoever, Your Honor.
 7                    THE COURT:  All right.
 8                    Does -- is the government urging any objections to
 9    that report?
10                    MS. TREVINO:  No, Your Honor.
11                    THE COURT:  All right.  Then I will hear from the
12    government on the plea agreement.
13                    MS. TREVINO:  Your Honor, for the reasons that are on
14    file with the Court, the government is asking the Court to
15    accept the plea agreement and follow the plea agreement in this
16    particular case.
17                    THE COURT:  All right.
18                    MR. YZAGUIRRE:  And as for the defense, we concur with
19    that, Your Honor.
20                    MR. QUINTANILLA:  Yes, Your Honor.  That is correct.
21                    THE COURT:  All right.
22                    Then, sir, is there anything you wish to say to the
23    Court before you are sentenced?
24                    THE DEFENDANT:  Yes, Your Honor.  I apologize to my
25    country, Mexico, to the United States of America, my family, to
```

1   my wife especially, my children, for all the mistakes I made.  I
2   feel that this time that I have spent in jail, I have reflected
3   and I've realized the so ill behavior that I was maintaining,
4   and truthfully, I am remorseful.
5               I also apologize to all of the people that I hurt
6   directly and indirectly.  That's all, Your Honor.
7               THE COURT:  All right.  Mr. Cardenas, when I sentence
8   a 19-year-old with a pregnant wife who, in exchange for being
9   guided into the United States illegally, agrees to carry one of
10  several bundles of marijuana and then is the only one who is
11  apprehended and is, therefore, held responsible for the weight
12  of all the bundles, I consider the life -- I consider the
13  difference in the life of you as a cartel leader whose family
14  lives in relative luxury.
15              When I sentence an 18-year-old high school dropout for
16  making a false statement when he purchased a firearm that he
17  knew was destined for Mexico, I think of you, the cartel leader,
18  with your bodyguards armed with weapons that were bought by that
19  naive 18-year-old who then goes to prison.
20              These examples have weighed heavily on me as I
21  considered whether I would accept the plea agreement that you
22  have reached with the government.  I have had to consider the
23  nature and the circumstances of the offense and your history and
24  characteristics.  Your sentence -- the sentence that I impose
25  has to protect the public from crimes that you might otherwise

1    commit.

2              In my 26 years as a judge, I have always been very
3    aware of the seriousness of the consequences of my decision for
4    the defendant, for his family, and the public in every case in
5    which I have to -- have to assess punishment.  I've presided
6    over capital murder cases in which the defendants have been
7    found guilty and executed; on the other hand, I have sentenced
8    people who, even though they have no criminal record and who
9    because of desperation or naivete, relying on prayer and luck,
10   carry drugs as partial payment for being led here illegally, and
11   then they find themselves in prison for as much as ten years.

12             So it's been my responsibility to determine whether
13   the sentence that the government is recommending to me and the
14   forfeiture that you have agreed to is punishment sufficient but
15   that -- that is sufficient but not greater than necessary to
16   reflect the seriousness of the crimes that you have been
17   convicted of, to promote respect for the law, and to provide
18   just punishment.

19             Because the law does not allow me to become involved
20   in plea negotiations, I have had to rely on the judgment of the
21   attorney for the government in her assessment of the equities in
22   this case.  My decision to accept the government's
23   recommendation has had to advance the interest of justice and
24   promote the public's respect for the law.

25             Your actions have generated fear and violence in our

1   community.  School children are not safe even in their schools
2   because of gun battles in the streets.  Bullets from a gun
3   battle in Matamoros have even ended up on the campus of the
4   University of Texas at Brownsville.  Struggling business owners
5   suffer because tourists fear for their safety.
6              You were a role model for the "narco trafficantes"
7   brandishing assault rifles who are not only younger and younger
8   as time goes by, but more brazen.  Their thirst for power is
9   unquenchable.  Their respect -- for their lack of respect for
10  the law and decency is tragic.
11             Kidnappings, extortion, gun battles in the streets, a
12  desperate economy, innocence lost, that is your legacy to your
13  country, to our communities on both sides of the border, and to
14  society.  However, I believe that the sentences I am about to
15  impose will ensure that when you are released from the Bureau of
16  Prisons, those "narco trafficantes" for whom you were a role
17  model in the past will have moved on and, regrettably, even
18  filled your shoes.
19             Therefore, pursuant to the Sentencing Reform Act of
20  1984, I do accept the plea agreement and sentence you to a term
21  of imprisonment of 25 years as to count one.
22             As to counts 14, 15, and 16, I hereby sentence you to
23  a term of imprisonment of five years, respectively, to run
24  concurrently with the sentence in count one.
25             As to count 17, I hereby sentence you to a term of

```
 1   imprisonment of 20 years to be served concurrently to count one.
 2            Upon release from imprisonment, you are to be placed
 3   on supervised release for a period of five years as to count
 4   one, and three years as to counts 14, 15, 16, and 17, to be
 5   served concurrently with the term of supervised release ordered
 6   for count one.
 7            During this period of supervised release, obviously if
 8   you are deported, you would not be in the United States to be
 9   directly supervised; however, the Court will still order
10   standard, mandatory, and special conditions of supervised
11   release that include not violating the law, state, federal, or
12   local, and not illegally returning to the United States.
13            Your violation of any condition that I've ordered can
14   result in your being sanctioned by being sent to prison.  Do you
15   understand that?
16            THE DEFENDANT:  Yes, Your Honor.
17            THE COURT:  Furthermore, the Court orders a special
18   assessment of $100 as to each of the counts for a total of $500,
19   which is due instanter.
20            Now, for the purposes of assessing a fine, the --
21   that's one thing that I did have a question about.  The
22   presentence report writer recommends a sentence of $100,000
23   relying on the financial ability of the defendant to pay.
24            However, Ms. Trevino, the -- the government having
25   reached an agreement for that -- a $50 million forfeiture, is
```

```
 1   the government requesting that the Court assess the fine that is
 2   recommended by the probation officer?
 3           MS. TREVINO:  We would leave that to the discretion of
 4   the Court, Your Honor.
 5           THE COURT:  All right.
 6           Then the Court orders, then, a fine of $100,000 as
 7   recommended by the probation officer, which is due instanter as
 8   well.
 9           As the basis for this sentence, the Court adopts the
10   findings in the presentence report.  Furthermore, the Court
11   orders the forfeiture to the United States the amount of
12   $50 million, which is to be reduced to a money judgment in that
13   amount rather than the greater amount stated in the notice of
14   the forfeiture provision of the indictment.
15           Sir, since you have waived your right to appeal as
16   part of the plea agreement, any limited bases that might remain
17   to raise on appeal you could raise even though you may be
18   indigent, but you must give notice of that intention within
19   14 days.
20           The Court finds that this punishment is sufficient but
21   not greater than necessary to achieve the sentencing objectives
22   of 18 U.S.C., 3 -- 3553, including the need to reflect the
23   seriousness of the offenses of which you have been convicted, to
24   promote respect for the law, to provide just punishment, to
25   afford adequate deterrence to criminal conduct, and to protect
```

1    the public from further crimes that you might otherwise commit.
2             Mr. Cardenas, judge judges -- God judges the secrets
3    of our hearts, and God will surely judge you on the secrets of
4    your heart, but more importantly, he will judge you on your
5    actions.
6             I wish now to direct my attention to the probation
7    officer who wrote such a comprehensive presentence report, to
8    the United States Attorney's Office, to the attorneys for the
9    defendant for their hard work in this difficult case.  I thank
10   my staff, those present here and in Brownsville for their
11   continuing dedication to the Court in making this case one that
12   was manageable.
13            And unless there is anything further --
14            MR. YZAGUIRRE:  Yes, Your Honor.
15            THE COURT:  Yes?
16            MR. YZAGUIRRE:  The judgment must reflect some things
17   that Mr. Quintanilla has them, and we would like the Court to
18   listen to them.  It has to do with when he was arrested in
19   Mexico, Your Honor.
20            MR. QUINTANILLA:  I have spoken to the Assistant U.S.
21   Attorney.
22            On page 2 of the pretrial -- presentence investigation
23   report, titled "Release Status," it indicates there the dates
24   that he was arrested, the date that the provisional arrest
25   warrant was served, and the date that he was extradited to the

1   United States from Mexico, and I would ask that the Court put
2   that in the judgment for BOP purposes, and also that none of
3   that time was credited against any sentence -- any other
4   sentence, foreign or domestic, Your Honor.
5            THE COURT:  I'm sorry.  That the --
6            MR. QUINTANILLA:  None of that time has been credited
7   to any other sentence, either foreign or domestic.
8            THE COURT:  In other words, no -- this time is not to
9   be credited towards any other sentence?
10           MR. QUINTANILLA:  The time from his arrest in Mexico
11  to the time he was extradited, none of that time has been
12  credited to any foreign or domestic sentence.
13           THE COURT:  All right.
14           MR. YZAGUIRRE:  So it should be credited to him,
15  Your Honor, because that's what he was being held for.  But --
16  but the law says that, Judge.
17           MS. TREVINO:  Your Honor, I'm unaware -- I can't say
18  with certainty that none of the time was credited to another
19  charge that he might have had in Mexico.  I do know that the
20  dates that are contained in here are correct, so I can represent
21  that to the Court as far as the date of arrest, the date when
22  the provisional arrest warrant was served, and the date whenever
23  he was extradited.  Those dates are correct.
24           The other, I cannot tell the Court one way or another.
25           THE COURT:  So the -- the arrest in Mexico on

1   March 14th, 2003, on what authority was that arrest?
2               MS. TREVINO:  We did, I believe -- I believe at that
3   point we did have a provisional arrest warrant in place, but I
4   don't believe that it was exercised at that point because this
5   indicates that the provisional arrest warrant itself was not
6   exercised until, I think, January 8th of 2004.
7               He was wanted in Mexico at that time and was sought by
8   everyone, so --
9               THE COURT:  Okay.
10              All right.  Then he'll get credit only to the date of
11  January 8th, 2004.
12              MR. YZAGUIRRE:  That's correct.
13              MR. QUINTANILLA:  If anything changes that the
14  government finds out, can we make it known to the Court within,
15  let's say, ten days or something?
16              THE COURT:  Well, you can make an advisory to the
17  Court and a request.
18              MR. QUINTANILLA:  Yes, Your Honor.
19              MS. TREVINO:  Your Honor, the other thing that the
20  government would ask is we would ask for the -- to move to
21  dismiss remaining counts of the indictment as well as the
22  original indictment as to this defendant.
23              THE COURT:  Motion's granted.
24              MR. QUINTANILLA:  No objection.
25              MS. TREVINO:  And, in addition, there is -- one of the

```
 1  victims did travel here from Brownsville to be here today.  It's
 2  Abrajam Rodriguez.  He's one of the victims of one of the
 3  assaults.  I have spoken with him, and he's indicated that he
 4  did not plan to allocute, but if the Court might want to inquire
 5  as well.
 6              THE COURT:  All right.  Well, I would ask that you
 7  determine that, whether he is and --
 8              MS. TREVINO:  No, Your Honor.  Thank you.
 9              THE COURT:  And no restitution was sought by the
10  government or any -- anyone involved in any of the indictments?
11              MS. TREVINO:  That's correct, Your Honor.
12              THE COURT:  All right.
13              Anything else, then, housekeeping-wise?
14              MR. RATLIFF:  Your Honor, the government submits a
15  proposed preliminary order of forfeiture for the $50 million.  A
16  copy has been served on the defense.
17              MR. YZAGUIRRE:  And --
18              THE COURT:  Today's date?
19              MS. TREVINO:  24th, I believe, Your Honor.
20              THE CASE MANAGER:  24th, Your Honor.
21              MR. YZAGUIRRE:  And, Your Honor, we would see if the
22  Court would allow the wife and daughter.
23              THE COURT:  You mean a visit here?
24              MR. YZAGUIRRE:  Right.
25              THE COURT:  No, absolutely not.
```

```
 1            All right.  Then the Court has accepted the -- and
 2   ordered the preliminary order of forfeiture at sentencing that's
 3   been provided to me in which the amounts itemized on pages 2
 4   and 3 are ordered.
 5            Anything else?
 6            MS. TREVINO:  Nothing further from the government,
 7   Your Honor.
 8            MR. QUINTANILLA:  Nothing further from the defense,
 9   Your Honor.
10            MR. YZAGUIRRE:  Nothing further, Your Honor.
11            THE COURT:  Thank you.  We're in recess.
12            MR. QUINTANILLA:  Thank you, Your Honor.  May we be
13   excused?
14       (Proceedings concluded at 10:15 a.m.)
15                            -oOo-
16            I certify that the foregoing is a correct transcript
17   from the record of proceedings in the above matter.
18
19   Date:  February 25, 2010
20                                   /s/ Heather Hall
21                                   Signature of Court Reporter
22
23
24
25
```